Mark C. Gardy
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Tel: (201)567-7377
Fax: (201)567-7337

Jeffrey C. Block
Jacob A. Walker
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617)398-5600
Fax: (617)507-6020

*Counsel for Proposed Lead Plaintiff and*
*Proposed Liaison and Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Lifestyle Investments, LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Amicus Therapeutics, Inc., and John F. Crowley, <br><br> Defendants. | Case No. 3:15-cv-07350-FLW-DEA |

GARY FRECHTER, on behalf of himself and all others similarly situated,

        Plaintiff,

     v.

AMICUS THERAPEUTICS, INC., JOHN F. CROWLEY, and JAY A. BARTH,

        Defendants.

Case No. 3:15-cv-07380-FLW-DEA

MICHAEL R. HARVEY, individually and on behalf of all others similarly situated,

        Plaintiff,

     v.

AMICUS THERAPEUTICS, INC. and JOHN F. CROWLEY,

        Defendants.

Case No. 3:15-cv-07448-FLW-LHG

**DR. BARRY BRENNER'S OPPOSITION TO VARIOUS MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................7

  I.  THE PSLRA GOVERNS THE SELECTION OF LEAD PLAINTIFF ..........7

  II.  DR. BRENNER HAS THE SINGLE LARGEST INTEREST IN THE
      RELIEF SOUGHT BY THE CLASS AND SHOULD BE PRESUMED
      TO BE THE LEAD PLAINTIFF ..................................................................8

     A.  The Combined Funds Should Not Be Permitted To Aggregate Their
         Losses ...................................................................................................10

     B.  The Long and Short Periods Assert Differing Legal Theories And
         An Investor With The Largest Losses In Both Periods Should Be
         Appointed As Lead Plaintiff ..................................................................13

  III.  ANY PRESUMPTION IN FAVOR OF THE COMBINED FUNDS
       HAS EITHER NOT BEEN ESTABLISHED OR HAS BEEN
       REBUTTED ...........................................................................................17

     A.  The Combined Funds Are Subject To Unique Defenses and Have
         Claims That Are Not Typical of The Class.............................................16

     B.  The Combined Funds Are Not Adequate Class Representatives ............19

     C.  Dr. Brenner Has Shown That The Combined Funds Would Not Be
         Adequate Class Representatives ............................................................20

  IV.  CONCLUSION .......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re BP Sec. Litig.*, 758 F. Supp. 2d 428 (S.D. Tex. 2010) ........................... *passim*

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ............................ 7, 10, 13

*In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406,
    08 Civ. 505 et al. (S.D.N.Y. May 5, 2008)...................................................... 5, 14

*In re Literary Works in Electronic Databases*, 654 F.3d 242 (2d Cir. 2011) .........21

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177(FLW),
    2007 U.S. Dist. LEXIS 66258 (D.N.J. Sep. 7, 2007).................................. *passim*

*MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wisc. 2009)........................................ 5, 14

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)......................................................21

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.*,
    256 F.R.D. 620 (E.D. Wisc. 2009) ........................................................................5

*Smith v. Suprema Specialties,* 206 F.Supp.2d 627 (D.N.J. 2002) ...........................20

**Statutes**

Private Securities Litigation Reform Act of 1995 ("PSLRA") ...................... *passim*

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................17

Dr. Barry Brenner, the investor who unquestionably sustained the largest loss of any single movant, submits this memorandum in further support of his motion for appointment as Lead Plaintiff[1] in this securities class action against Amicus Therapeutics, Inc. ("Amicus"), John F. Crowley and Jay A. Barth[2] ("Defendants"), and in opposition to various motions for Lead Plaintiff filed by other parties in three related cases.[3]   As we demonstrate, Dr. Brenner should be appointed Lead Plaintiff.

## INTRODUCTION

This application presents a somewhat rare question for the Court: should it "blindly accept" the proposed longest class period when two different theories have been pleaded with two different class periods, or should the Court appoint the investor with the single largest loss in *both class periods*, who has no typicality or adequacy problems, and who will insure that all class members receive the most adequate representation?

---

[1] *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, No. 3:15-cv-07350-FLW-DEA (D.N.J.), ECF No. 23. (References to "ECF No." refer to the *Lifestyle Investments, LLC* docket unless otherwise indicated.)
[2] Defendant Barth is named only in the *Frechter* complaint.
[3] ECF Nos. 17, 18 20, 21, 22, 23, and 24.

Here, three complaints have been filed with two very different class periods and two very different theories of liability. Two of the three complaints[4] assert class periods from September 15, 2015 through October 1, 2015 (the "Short Period"). These complaints allege that Defendants misrepresented the actual feedback they received from the Food and Drug Administration (the "FDA") during a September 15, 2015 in-person meeting with the agency. (*Id.* ¶ 22.) Defendants' September 15, 2015 press release portrayed the just-occurred meeting as positive and stated that Amicus' new drug application ("NDA") for its developmental drug Galafold would be submitted by year-end. (*Id.*) Yet just two weeks later, before the markets opened on October 2, 2015, Amicus reversed course and said that it would *not* be in a position to file its NDA by year end, in part "based on the meeting we just recently held in person with the FDA." (*Frechter Compl.* ¶ 45.) Amicus's stock price fell by more than 50% as a result. (*Lifestyle Compl.* ¶ 7.)

Moreover, the Short Period complaints allege that between September 15, 2015 and October 1, 2015, certain Amicus insiders sold stock in the company. (*Id.* ¶¶ 36-41.) The complaints further allege that Amicus materially changed the consideration it was paying for another company, Scioderm, Inc., that it was

---

[4] *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc., et al.,* No. 3:15-cv-07350-FLW-DEA (D.N.J.); *Harvey v. Amicus Therapeutics, Inc., et al.,* No. 3:15-cv-07448-FLW-LHG (D.N.J.).

2

acquiring during the same Short Period.  (*Id.* ¶¶ 42-45.)  Defendant Crowley, the Chief Executive Officer of Amicus, was also on the Board of Scioderm.  (*Id.* ¶ 42.)  Amicus reduced the amount of stock being used to fund the acquisition, and replaced the stock with cash.  (*Id.* ¶¶ 43-44.)  Thus, the owners of Scioderm, including Crowley, avoided suffering a significant loss.  These events all are alleged to have occurred after September 15, 2015 and before October 2, 2015, *i.e.*, during the Short Period.

The third complaint, *Frechter*,[5] alleges a class period going back to March 19, 2015 and running through October 1, 2015 (the "Long Period").  (*Frechter Compl.* ¶ 1.)  Essentially, the *Frechter* case alleges that, for a period of six months before Amicus officials met with the FDA on September 15, 2015, Amicus defrauded investors by repeatedly representing that Amicus was preparing its NDA for Galafold "for submission for the second half of this year [2015]."  (*Id.* ¶ 28.)  *Frechter* also cites the October 2, 2015 Amicus press release as the corrective event.  (*Id.* ¶ 44.)

Thus, two theories of fraud emerge: the Short Period concerns misrepresentations about hard historical facts and, following those alleged misrepresentations, (i) stock sales by Amicus officers; and (ii) material changes to the terms of an acquisition of a company that Defendant Crowley was on the Board

---

[5] *Frecther v. Amicus Therapeutics, Inc.*, 3:15-cv-07380-FLW-DEA (D.N.J.).

of by reducing the amount of stock provided in the acquisition and replacing it with cash.  By contrast, the Long Period concerns statements about Amicus's preparations to submit an NDA during the second half of 2015, alleged to be misleading because Defendants should have known that their clinical data would not be well received by the FDA and would require further testing.  The September 15, 2015 meeting with the FDA is a significant differentiating fact between the two competing class periods.

Dr. Brenner suffered losses of $193,274.45 during the Long Period (March 19, 2015 through October 1, 2015) and suffered losses of $56,779.66 during the Short Period (September 15, 2015 through October 1, 2015).

A group of four unrelated public pension funds suffered combined losses during the Long Period of $222,412.48.[6]   The Southeastern Pennsylvania Transportation Authority ("SEPTA") lost $82,963.29; Bucks County Employees Retirement Fund ("Bucks County") lost $50,670.38; Delaware County Employees Retirement Fund ("Delaware County") lost $61,352.01; and Chester County Employees Retirement Fund ("Chester County") lost $27,426.81 (the "Combined Funds").

*Significantly, not one of these funds purchased a single share of Amicus stock during the Short Period.*   Other courts, when confronted with similar

---

[6] As we discuss, all of the other movant's losses are well below those of Dr. Brenner or the Combined Funds.

situations have either employed a "plausibility" or an "obviously frivolous" review of the proposed periods and have appointed as lead plaintiffs the investor with standing and motive to protect the rights of investors in each alleged period. *See, e.g., In re BP Sec. Litig.*, 758 F. Supp. 2d 428 (S.D. Tex. 2010) ("There is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest"); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.*, 256 F.R.D. 620 (E.D. Wisc. 2009); *In re Centerline Holding Co. Sec. Litig.*, 08 Civ. 505 et al., 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008).

This Court, however, need not decide whether the Long Period is "plausible" or "obviously frivolous."  Rather, given the differing facts and theories, the Court should be concerned that purchasers in *both* periods be adequately represented. The Combined Funds have *no* standing to assert claims for losses in the Short Period and have *no* incentive to insure a potential recovery for investors in the Short Period.  If the Combined Funds were named the sole Lead Plaintiff and the Long Period claims were to be dismissed, then the entire case would also be dismissed and Dr. Brenner, and other purchasers in the Short Period, would be left without a remedy.  Indeed, in their opening motion, the Combined Funds do not

even recognize the differing class periods and differing theories, content to ignore this obvious deficiency in their application.

The Combined Funds have no incentive to insure proper prosecution of the Short Period for the simple reason that they have no standing in the Short Period. In stark contrast, Dr. Brenner has the incentive to insure that both proposed periods are adequately represented and prosecuted. Dr. Brenner, having lost more money himself than any single one of the Combined Funds in the Long Period, is without a doubt motivated and committed to attempting to recover these losses for himself and the entire class. Dr. Brenner has the economic incentive to prosecute both periods. As the court in the *BP Securities Litigation* acknowledged, plaintiffs without standing to assert certain claims can not adequately represent the class:

> Because of these divergent theories, [the Combined Funds] might not have an interest in vigorously pursuing the claims central to [Dr. Brenner's] shorter class period, in favor of emphasizing arguments about fraud based on conduct [during the Long Period]. Absent class members could be prejudiced by [the Combined Funds] manner of drafting a consolidated complaint, defending motions to dismiss, and conducting discovery. Accordingly the Court cannot with confidence find that [the Combined Funds] claims have the "same essential characteristics" as those of other class members . . . Therefore, [the Combined Funds] are not entitled to a presumption that they are the most adequate lead plaintiffs.

*In re BP*, 758 F.Supp.2d at 438.

The same is true here. The Combined Funds have no purchases or losses in the Short Period and thus do not have the largest financial interest in the relief

sought by the class and cannot make a *prima facie* showing of adequacy. Accordingly, under these circumstances, the Court should find that Dr. Brenner is the entitled to the PSLRA's lead plaintiff presumption, and is otherwise the most adequate plaintiff and should be appointed as Lead Plaintiff.

## ARGUMENT

## I.    THE PSLRA GOVERNS THE SELECTION OF LEAD PLAINTIFF

The selection of a lead plaintiff in a securities class action is guided by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  "In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status.  The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (2d Cir. 2001), *citing* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  While the PSLRA does not provide a specific formula for courts to follow, the Third Circuit has endorsed an approach that looks to the approximate losses suffered by the proposed lead plaintiff.  *Id.*  Once the court determines which plaintiff has the largest financial interest in the relief sought by the class, it must then "determin[e] whether the movant has made a prima facie showing of typicality and adequacy."  *Id.* at 263 (*citing* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).).  This is a threshold determination made by the court without consideration of the arguments of other members of the class.  *Id.* at 263-64.

However, in making its determination, "the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id.* at 264; *see also In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177(FLW), 2007 U.S. Dist. LEXIS 66258, at *18 (D.N.J. Sep. 7, 2007) (Wolfson, J.)

Here, to determine which proposed Lead Plaintiff has the largest financial interest in the relief sought by the class, the Court should (1) decide whether the Combined Funds will "function as a single person" and "make unified decisions," *Vonage,* 2007 U.S. Dist. LEXIS 66258, at *37; (2) determine whether Short Period losses should be considered for purposes of determining which applicant has the largest financial interest in the relief sought by the class; and (3) determine whether any presumption in favor of the Combined Funds has been rebutted.

## II. DR. BRENNER HAS THE SINGLE LARGEST INTEREST IN THE RELIEF SOUGHT BY THE CLASS AND SHOULD BE PRESUMED TO BE THE LEAD PLAINTIFF

Seven motions for appointment as Lead Plaintiff were filed in this action. The movants are:

| ECF No.[7] | Proposed Lead Plaintiff | Losses 3/19/15-10/1/15 | Losses 9/15/15-10/1/15 | Transactions in Short Period? |
|---|---|---|---|---|
| 23 | Dr. Barry Brenner | $193,274 | $56,780 | Yes |
| 24 | SEPTA Bucks County Chester County Delaware County | $82,963.29 $50,670.38[8] $27,426.81 $61,352.01 | $0 | No |
| 21 | James Kerrigan | $53,140 | $2,382[9] | Yes |
| 17 | Maria Baldi | $38,850 | $38,850 | Yes |
| 20 | Nicola Diligu | $27,344 | $1,736[10] | Yes |
| 22 | Bernard Kijet and Kevin Gilbo | $7,733 (aggregated) | $7,733 (aggregated) | Yes |
| 18 | Gary Frechter | $5,113 | $0 | No |

Without a doubt, Dr. Brenner has the largest single loss of any movant in either period, and is therefore entitled to the presumption that he has the largest financial interest in the relief sought by the class. Dr. Brenner should be appointed as the Lead Plaintiff for three reasons.

*First*, Dr. Brenner's losses during both the Short Period and the Long Period are larger than those of any other individual proposed Lead Plaintiff. Only when

---

[7] ECF No. refers to the docket entry number for each Lead Plaintiff application made in the lead *Lifestyle Investments* case.

[8] The loss chart Bucks County relies on its motion contains an error: the chart purports to show that Bucks County purchased 1,170 shares of Amicus stock for $12.7587 per share on April 24, 2015. However, Amicus shares traded in a range between $12.16 and $12.56 on that trading day.

[9] Applicant Kerrigan did not break out his Short Period losses; this figure is an approximation of his losses based on the data provided. In any event, Kerrigan's total losses during the Long Period are lower Dr. Brenner's losses during the Short and Long Period.

[10] Applicant Diligu did not break out his Short Period losses; this figure is an approximation of his losses based on the data provided. In any event, Diligu's total losses during the Long Period are lower Dr. Brenner's losses during the Short and Long Period.

the Combined Funds aggregate their losses can they argue that they have a loss larger than Dr. Brenner's (and only then during the Long Period).   But such aggregation is neither appropriate nor necessary in this case.

*Second*, even if the Court allows the Combined Funds to aggregate their losses, the Court should insure that the investor with the largest loss in *both* periods be appointed to insure that *all class members* have a Lead Plaintiff with the proper standing and incentive to represent them all.

*Third*, even if the Court permits the Combined Funds to aggregate their losses and looks only to the loss totals in the Long Period, then the Court should find any presumption made in favor of the Combined Funds has been rebutted as their losses "are markedly different [and the] legal theory upon which the claims are based differ[] from that upon which claims of other class members will perforce be based."  *Vonage*, 2007 U.S. Dist. LEXIS 66258, at *18.

### A.   The Combined Funds Should Not be Permitted to Aggregate Their Losses

Courts have discretion to appoint the investor with the largest stake in the litigation.   *Id.* at *14.   Indeed, in the Third Circuit, a court can consider as a threshold factor the fact that a proposed movant consists of a group, rather than an individual.   *In re Cendant Corp. Litig.*, 264 F.3d at 266. *See also Vonage,* 2007 U.S. Dist. LEXIS 66258, at *20 ("Another factor in making the threshold adequacy

determination arises when the movant with the largest financial interest in the relief sought by the class is a group rather than an individual person or entity.")

Representatives of the Combined Funds stated in a joint declaration that they "decided that it would be a benefit to the organizations [they] represent and the Class [they] seek to represent if [they] jointly sought appointment as Lead Plaintiff in a small cohesive group." (D.E. No. 24-3, Ex. E, page 3) (the "Joint Decl.") And while the joint declaration states that "SEPTA's governing board has included . . . representatives appointed by the Commissioners of Bucks, Chester and Delaware Counties," (*id.* at 2), it does not discuss why these funds decided to jointly move together or how they came to learn that each particular fund suffered a loss on their investment in Amicus. Further, the Joint Declaration acknowledges that the Combined Funds will not "function as a single person" and will be unable to make "unified decisions," *Vonage*, 2007 U.S. Dist. LEXIS 66258, at *37, but, instead, will need to consult with each other and attempt to reach "joint decisions." (Joint Decl. at ¶ 8.) Furthermore, the Joint Decl. admits that "representatives of SEPTA and each of the Counties held a joint conference call," yet no information is provided as to who these representatives are, what their role or authority is with each fund, and who will actually be making the decisions for these funds.

In *Vonage*, this Court allowed a lead plaintiff applicant consisting of a "small, completely related group" directed by a single individual who "ma[de] all

investment decisions" to aggregate their losses. *Vonage*, 2007 U.S. Dist. LEXIS 66258, at *37. Because the leader of that group was investing on behalf of his family and in several wholly-owned investment vehicles, the Court found that the group "function[ed] as a single person, which . . . will be advantageous for the class as [the leader of the group] is able to control the prosecution of this litigation and make unified decisions." *Id.*

Unlike in *Vonage*, however, here the four Combined Funds do *not* function as a single person. Instead, they are four separate entities, who each have separate boards and who each represent the interests of distinct constituencies. Nothing about the Combined Funds' geographic proximity makes them "completely related," nor does it allow the funds to "function[] as a single person."

The Combined Funds are likely to argue that their status as institutional investors should militate in favor of their ability to aggregate their losses and be appointed Lead Plaintiff in this case. But as this Court found in *Vonage*, the PSLRA does not offer any special preference to an institutional investor, much less to a combination of them:

> "The suggestion that [an applicant] is entitled to some preferential treatment as an institutional investor is misplaced. The predicate of PSLRA's aim to encourage institutional investors to seek a more active role in securities class actions is explicit in the body of the statute—namely that investors with the largest financial interest are the presumptively most adequate plaintiff. Most often, institutions will have larger investments (than individuals) and, therefore, will suffer larger losses. Contrary to [the institutional investor's] contentions, the

> PSLRA does not afford institutions a preference over other movants
> with greater financial losses."

*Vonage*, 2007 U.S. Dist. LEXIS 66258, at *39 n.15.

This Court should exercise its discretion, and refuse to allow four separate, unrelated funds to aggregate their losses for purpose of determining Lead Plaintiff in this case.  The Combined Funds have failed to show who will be the decision makers, how they will make their decisions, and how and why they came together to prosecute this action.  The purpose of the PSLRA's lead plaintiff provision is to "locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an agent for the class." *Cendant*, 264 F.3d 201, 266.  There is no dispute that Dr. Brenner is a sufficiently sophisticated investor who is plenty interested in this litigation and its outcome; no individual Lead Plaintiff applicant has losses larger than he does in either period. Because Dr. Brenner has the largest loss of any *individual* party seeking Lead Plaintiff status in either the Long Period or Short Period, he is entitled to the PSLRA's presumption in favor of the applicant with the largest financial interest in the relief sought by the class.

### B. The Long and Short Periods Assert Differing Legal Theories and an Investor With the Largest Losses in Both Periods Should Be Appointed as Lead Plaintiff

Other courts, when faced with questions about large variances in proposed class periods and what the right proposed class period is, have reviewed the

proposed periods to determine whether they are either "obviously frivolous" or "not plausible." *See, e.g., MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wisc. 2009) and *In re BP Sec. Litig.*, 758 F.Supp.2d 428 (S.D. Tex. 2010) (employing an "obviously frivolous" standard) and *Centerline*, 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008) (employing a "plausibility" standard).

Here, the Court need not make such a determination. A review of the theories of both periods reveals a significant differentiation in the theories underlying both actions and the Court can simply appoint Dr. Brenner, who lost the most money in both periods, to adequately represent the entire class.

The theory underlying the Long Period, as alleged in *Frechter*, is that Amicus misled investors between March 19, 2015 and September 14, 2015, by stating that Amicus: (1) was preparing an NDA for Galafold for submission by year end, and (2) was confident about the results of its clinical studies for Galafold. For example, statements made in an August 5, 2015 press release are illustrative of the *Frechter* complaint's overall allegations of false and misleading statements made between March 19 and September 14, 2015:

> In the U.S., a pre-New Drug Application (pre-NDA) meeting is scheduled for the third quarter with the Food and Drug Administration (FDA) to discuss the content of the planned NDA (Subpart H) and proposed Phase 4 post- marketing commitments for Galafold in the second half of this year.
>
> Positive Phase 3 data in both treatment-naïve and ERT-switch patients have shown that treatment with Galafold has resulted in reductions in

disease substrate, stability of kidney function, reduction in cardiac mass, and a positive impact in patient-reported outcomes in patients with amenable mutations.

*Frechter* ¶ 37.

The *Frechter* complaint also cites to various statements made by Amicus that suggest that the company was "on track" to submit its Galafold New Drug Application by the end of 2015. (*See, e.g., Frechter Compl.* ¶ 29 ("[W]e're actively preparing the new drug application, the NDA submission for the second half of this year").)

In contrast, the Short Period's theory is that Defendants misrepresented what the FDA actually told Amicus at their September 15, 2015 meeting.  Thus, September 15 represents a demarcation in the factual theory underpinning the case: prior thereto Defendants are charged with misleading investors that they were "on track" to submit an NDA by year-end 2015.  After September 15, however, Defendants are charged with misleading investors as to what Defendants were actually told at the September 15 FDA meeting.

All three complaints agree that the corrective press release that ends the class period and caused Amicus stock to drop was issued on October 2, 2015.  That press release is based on the September 15 meeting:

15

**Amicus Therapeutics Provides U.S. Regulatory Update for Migalastat Monotherapy**

CRANBURY, N.J., Oct. 2, 2015 (GLOBE NEWSWIRE) -- Amicus Therapeutics (Nasdaq:FOLD), a biotechnology company at the forefront of therapies for rare and orphan diseases, today announced additional regulatory guidance from the U.S. Food and Drug Administration (FDA) on the oral small molecule pharmacological chaperone migalastat for the treatment of Fabry disease.

Amicus has received final FDA minutes **from the September pre-NDA meeting** and has conducted additional follow-up interactions with the Agency this week. In conjunction with the Agency, Amicus is further evaluating several U.S. pathways including potentially generating additional data on migalastat's effect on gastrointestinal symptoms in Fabry disease to support submission requesting full approval as well as a Subpart H strategy. In addition, the Agency has requested further integration of existing clinical data across studies which will require more time to complete. **Based on this guidance from the FDA, Amicus does not anticipate being in a position to submit the NDA for migalastat monotherapy in the United States by the end of this year. The timing of an NDA submission will be based on the determination of the optimal regulatory pathway.**

*Lifestyle Compl.* ¶ 26 (emphasis added).  In fact, in a conference call on October 2, 2015 Crowley acknowledged that Amicus's decision to not submit the NDA by year-end was based in part on what the Company learned during the September 15, 2015 meeting. *Frechter* ¶ 45.

Investors deserve a Lead Plaintiff who suffered significant losses in both proposed periods to insure that *both periods* will be properly prosecuted.  Because Dr. Brenner has the largest loss in both the Long and Short Period, the Court should find that he has the largest financial interest and appoint him as the Lead Plaintiff.

16

## III.   ANY PRESUMPTION IN FAVOR OF THE COMBINED FUNDS HAS EITHER NOT BEEN ESTABLISHED OR HAS BEEN REBUTTED

Even if the Court concludes that it is appropriate to allow the Combined Funds to aggregate their losses and further concludes that the Combined Funds have the largest financial interest in the relief sought by the class, the Court should find that the funds do not otherwise satisfy the requirements of Fed. R. Civ. P. 23, and that any presumption in favor of the Combined Funds has been rebutted.

### A.   The Combined Funds Are Subject to Unique Defenses and Have Claims That Are Not Typical of the Class

In *Vonage*, this Court recognized that to make a *prima facie* showing of typicality the court "should apply traditional Rule 23 principles, including whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon with the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Id*. at *18. In making its determination based on its own independent judgment, the Court "should consider the pleadings that have been filed, the movant's application, and any other information that the Court required to be submitted." *Id*.  Here, the Combined Funds claims are "markedly different" from the claims of investors in the Short Period as they are based upon different legal theories.

The Combined Funds conducted no transactions in Amicus stock on or after September 15, 2015, and thus could not have been misled by Amicus's September

17

15, 2015 press release.  Claims related to statements made on and after September 15, 2015, after Amicus held it's meeting with the FDA, are fundamentally different claims related to statements made before September 15.  The post-September 15 statements involve allegations of misstatements about a hard historical fact—what was said at Amicus's September 15 meeting with the FDA.  Indeed, two of the three complaints filed in this case allege contain a class period that *begins* with the publication of the September 15 press release.

Unlike Dr. Brenner, who has significant transactions during both the Short and Long Periods, the Combined Funds have *no* transactions in the Short Period.  As such, the Combined Funds would have no standing to prosecute claims regarding any of the false statements made during the Short Period.  Thus, the Combined Funds claims are not typical of those of the entire class, and are otherwise subject to a unique defense (lack of standing) that renders them inadequate as class representatives.

Because the Combined Funds are subject to a unique defense that would allow Amicus to defeat a motion to dismiss made by the Combined Funds without having to address post-September 15, 2015 statements, the Combined Funds fail to meet the requirements of Fed. R. Civ. P. 23, and should thus not be appointed as Lead Plaintiffs.

**B.      The Combined Funds Are Not Adequate Class Representatives**

In considering whether a lead plaintiff movant has demonstrated its adequacy in the first instance, "a court should consider whether the movant 'has the ability and incentive to represent the claims of the class vigorously . . . and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Vonage*, 2007 U.S. Dist. LEXIS 66258, at *19 (internal citations omitted).    Here, consideration of the Combined Funds ability and incentive to represent the claims of *all* class members reveals that there is a conflict between their interests and those of the entire class.

In the *BP Sec. Litig.* the court was confronted with an almost identical issue. A group of public pension funds sought to represent an all-encompassing class of purchasers of BP stock, while a small group of individuals sought to represent a shorter class period.  The pension funds there, like the Combined Funds here, had no stock purchases in the shorter class period and the court found the pension funds failed to establish the presumption of adequacy required by the PSLRA:

> Because of these divergent theories, [the Combined Funds] might not have an interest in vigorously pursuing the claims central to [the] shorter class period, in favor of emphasizing arguments about fraud based on conduct before and after the [Short Period]. Absent class members could be prejudiced by [the Combined Funds] manner of drafting a consolidated complaint, defending motions to dismiss, and conducting discovery. Accordingly, the Court cannot with confidence find that [the Combined Funds] claims have the "same essential characteristics" as those of other class members, or that no significant

19

> conflicts exist between [the Combined Funds] and other class members as a result of differences in their claims. While it is by no menas certain that such conflcits would prevent [the Combined Funds] from adequately representing the class, the Court finds it particularly important at this early stage of the case to avoid prejudicing the claims of absent class members through the appointment of a lead plaintiff who cannot fully and fairly represent them. Because [the Combined Funds] losses are concentrated outside of the [Short] Period, and because that concentration leads [the Combined Funds] to present different legal theories than other plaintiffs, they have not made a preliminary showing of typicality and adequacy. Therefore, [the Combined Funds] are not entitled to a presumption that they are the most adequate lead plaintiffs.

*In re BP,* 758 F. Supp. 2d at 438. The same is true here. The Combined Funds have no purchases in the Short Period and do not have the same economic incentive or standing to pursue those claims which rest on a differing legal theory. Because the Combined Funds cannot make a *prima facie* case that they are adequate class representatives under Fed. R. Civ. P. 23, they should not be appointed as Lead Plaintiffs.

### C.   Dr. Brenner Has Shown That the Combined Funds Would Not Be Adequate Class Representatives

Finally, the Combined Funds' lack of transactions during the post-September 15 period render the Combined Funds inadequate class representatives. *See Smith v. Suprema Specialties,* 206 F.Supp.2d 627, 637-38 (D.N.J. 2002) (holding that a group of investors failed to demonstrate that it would "adequately represent the interests" of all class members because it did "not assert all of the claims or legal theories of the purported class.").

For the reasons described above, the Combined Funds cannot adequately represent the interest of those class members with post-September 15 claims during discovery, settlement negotiations, or trial, because the funds and their counsel will not be incentivized to rely on post-September 15 statements when litigating the case.   For example, the Combined Funds might be more willing to settle this litigation for a small recovery before a motion to dismiss is heard because they could reasonably worry about the strength of their pre-September 15 claims, and know they would lose standing if those pre-September 15 claims are dismissed. However, those class members who transacted in Amicus stock *after* September 15 would view the settlement calculus much differently, knowing that they could continue to prosecute their case (and, under the PSLRA, obtain discovery from Defendants), even if only the post-September 15 claims remained following a motion to dismiss.

Courts have recognized the need for independent representation where subsets of the Class have claims of greater and lesser strength.  *See, e.g., In re Literary Works in Electronic Databases*, 654 F.3d 242, 254 (2d Cir. 2011) ("[I]ndependent counsel" is necessary where subgroups have claims of different strength which . . . command[] a different settlement value."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 856-57 (1999) ("separate representation" held necessary where one class of claimants had more valuable claims than another class of

claimants.)  Here, there is no need for a separate subclass to represent the interests of the post-September 15 class, because Dr. Brenner adequately represents purchasers during both the Short and Long Periods.

Thus, even if the Court finds that the Combined Funds are entitled to the PSLRA's presumption in favor of the party with the largest financial loss, and even if the Court finds that the Combined Funds make a *prima facie* showing of adequacy and typicality, that presumption has been rebutted by Dr. Brenner, who has shown why the Combined Funds would be inadequate class representatives with claims not typical of those of the Class.

## IV.   CONCLUSION

For the reasons set forth herein, Dr. Brenner should be appointed Lead Plaintiff and appoint his selection of Block & Leviton LLP and Gardy Notis, LLP as Lead and Liaison Counsel for the Class.

Dated: December 21, 2015

GARDY NOTIS, LLP
*Counsel for Proposed Lead Plaintiff and Proposed Liaison Counsel for the Class*

By:   /s/ Jennifer Sarnelli
      Jennifer Sarnelli

Mark C. Gardy
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Tel: (201)567-7377

Fax: (201)567-7337

Jeffrey C. Block
Jacob A. Walker
**BLOCK & LEVITON LLP**
*(pro hac vice motions pending)*
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617)398-5600
Fax: (617)507-6020