# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESTYLE INVESTMENTS, LLC, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>AMICUS THERAPEUTICS, INC. and JOHN F. CROWLEY,<br><br>            Defendants. | Civil Action No. 3:15-cv-07350 |
| GARY FRECHTER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>AMICUS THERAPEUTICS, INC., JOHN F. CROWLEY, AND J.A. BARTH,<br><br>            Defendants, | Civil Action No. 3:15-cv-07380 |
| MICHAEL R. HARVEY, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>AMICUS THERAPEUTICS, INC. and JOHN F. CROWLEY,<br><br>            Defendants, | Civil Action No. 3:15-cv-07448<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE PUBLIC PENSION FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Return Date: January 4, 2016 |

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

LEGAL ARGUMENT.....................................................................................................................1

      A.      Financial Interest is Calculated Based on the Operative Class Period .....................1

      B.      No Conflicting Case Theories Exist and Brenner Fails To Overcome the
Public Pension Funds' *Prima Facie* Showing of Typicality and Adequacy ...........3

CONCLUSION................................................................................................................................7

i

**TABLE OF AUTHORITIES**

**CASES**

*In re BP Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................................4, 5

*In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir. 2001) ..........................................................7

*In re Centerline Holding Co. Sec. Litig.*,
    No. 08-cv-505- *et al.*, 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008) ................2, 5, 7

*Chan v. Orthologic Corp.*,
    No. 96-1514, 1996 U.S. Dist. LEXIS 22385 (D. Ariz. Dec. 19, 1996) ......................................2

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ....................................................................................................................6

*Deering v. Galena Biopharma, Inc.*,
    No. 3:14-cv-00367, 2014 U.S. Dist. LEXIS 140766 (D. Or. Oct. 3, 2014) ..........................2, 3

*Hevesi v. Citigroup, Inc.*,
    366 F.3d 70 (2d Cir. 2004) .........................................................................................................5

*Newby v. Enron Corp. (In re Enron Corp., Sec. Litig.)*,
    206 F.R.D. 427 (S.D. Tex. 2002) ................................................................................................6

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ..........................................................................................2, 5

*In re Vonage Initial Public Offering (IPO) Secs. Litig.*, No. 07-cv-177, 2007 U.S.
    Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ................................................................................7

*In re World Com, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) ........................................................................................6

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4 ...................................................1, 2

The Public Pension Funds respectfully submit this reply memorandum of law responding to the opposition of Dr. Barry Brenner ("Brenner") (ECF No. 31) ["Brenner Opp. Br."] to the Public Pension Funds' motion for appointment as lead plaintiff (ECF No. 24). For the reasons below, the Public Pension Funds' motion (ECF No. 24) should be granted and Brenner's competing motion (ECF No. 23) should be denied.

## INTRODUCTION

Brenner concedes that the Public Pension Funds have the largest loss within the Operative Class Period of March 19, 2015 through October 2, 2015, rendering them the presumptive lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3)(B). (Brenner Opp. Br. at 4). Because Brenner does not have the greatest financial interest, he resorts to making arguments that would require the Court to: prematurely and improperly engage in a merits analysis of the Class's claims (notwithstanding his posturing of such arguments as otherwise); and, jettison the PSLRA's directives.

In addition, there are no conflicting case theories and certainly no facts that render the Public Pension Funds, which purchased during the PSLRA-noticed Class Period, anything but fully able to serve as the lead plaintiff. In contrast, Brenner's arguments conflict with the interests of the members of the Class who he purportedly wants to represent. In accordance with the PSLRA, the Public Pension Funds should be appointed as the lead plaintiff of the Action.

## LEGAL ARGUMENT

### A.     Financial Interest is Calculated Based on the Operative Class Period

The Operative Class Period was set by the PSLRA Notice published by Brenner's counsel. *See* Declaration of Catherine Pratsinakis [hereinafter, "Pratsinakis Decl."], ECF 24-3, at Ex. B (The PSLRA notice stated that counsel is "expanding the period for which it *will* seek a

1

recovery for investors. ***Investors who purchased Amicus securities between March 19, 2015 and October 1, 2015 will now be eligible for inclusion in the action***") (emphasis added).  This was also the class period alleged in the *Frechter* Complaint, at ¶1.

As the Public Pension Funds demonstrated in their papers (ECF No. 30 at Section A.2, pages 5-9), Courts consider the longest class period alleged in the filed complaints when determining the movants' financial interests under the PSLRA's lead plaintiff provisions. 15 U.S.C. § 78u–4(a)(3)(B). "[N]othing in the [PSLRA] suggests that the court should make any effort to define the class before it has selected a lead plaintiff," and courts are not to rule on the proper class period but instead must "use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009). Differing alleged class periods do not affect the appointment of lead plaintiff: "the mere fact that some of the [] plaintiff's purchases occurred before the [other] plaintiffs' class period does not necessarily create a conflict. . . . should the progression of this case reveal that the different class periods do significantly affect the nature of the parties claims, the court is free to split the class into appropriate subclasses at that time." *Chan v. Orthologic Corp.,* No. 96-1514, 1996 U.S. Dist. LEXIS 22385 at *11-12 (D. Ariz. Dec. 19, 1996).

As made abundantly clear by the court in *In re Centerline Holding Co. Sec. Litig.*, which Brenner cites to and relies upon (*see* Brenner Opp. Br. at 5, 14), "[i]t would be ***inappropriate at this stage in the litigation to make any determination about the merits of the claims***. However, the appropriate standard here is plausibility, not possibility." No. 08-cv-505- *et al.*, 2008 U.S. Dist. LEXIS 36406, at **13-14 (S.D.N.Y. May 5, 2008) (appointing unrelated investor group

2

with largest reported loss during broadest class period because class period was plausible and group had largest financial interest) (emphasis added).

The decision in *Deering v. Galena Biopharma, Inc*., No. 3:14-cv-00367, 2014 U.S. Dist. LEXIS 140766, at \*\*33-34 (D. Or. Oct. 3, 2014), is also instructive. In *Deering,* several complaints were filed alleging various class periods and the PSLRA notice referenced only one of the shorter class periods. Despite that the PSLRA notice was not revised to expand the class period, nearly every movant, but one, applied the longer class period. *Id.* at \*\*21-22. The movant group that favored the shorter class period had higher losses in the shorter class period and fewer losses in the extended class period. *Id.* at \*\*32-33. The court rejected the movant group's attempt to "excise[] more than two thirds of the class period alleged in several of the complaints in order to serve the purposes of [that movant]" and found the investor group with the largest loss in the extend class period "would provide adequate representation of the class." *Id.* at \*34 (appointing movant group with the largest losses in the extended class period)

The Public Pension Funds, with the largest loss in the most inclusive Operative Class Period is the presumptive lead plaintiff.

**B.     No Conflicting Case Theories Exist And Brenner Fails To Overcome the Public Pension Funds'** ***Prima Facie*** **Showing of Typicality and Adequacy**

Contrary to Brenner's claims, the allegations and case theories as between *Frechter* (alleging the Operative Class Period)[1] and *Lifestyle* (alleging the Initial Class Period) are not in conflict and, therefore, do not render the Public Pension Funds atypical nor warrant a departure from appointing a lead plaintiff pursuant to the statutory directives of the PSLRA.

---

[1] *See* ECF No. 1, Complaint filed in *Lifestyle Investments, LLC, v. Amicus Therapeutics, Inc. and John F. Crowley, No.* 3:15-cv-07350, filed October 7, 2015 [hereinafter, "*Lifestyle* Complaint"] and ECF No. 1, Complaint filed in *Frechter v. Amicus Therapeutics, Inc., John F. Crowley, and Jay A. Barth*, No. 3:15-cv-07380, filed October 8, 2015 [hereinafter, "*Frechter* Complaint"].

3

First, as already discussed, to adopt Brenner's position would require an unwarranted and improper merits-based assessment by the Court of claims and class periods, and one that is contrary to the Class's interests. *Centerline,* 2008 U.S. Dist. LEXIS 36406, at *13.  Second, the allegations and case theories are not in conflict. As shown by the following allegations, the Action concerns a fraudulent scheme and misconduct undertaken by Amicus (and certain officers and directors) to defraud investors about the timing of Amicus submitting an NDA for Galafold, and specifically to mislead investors as to the NDA submission being done on an accelerated track in the second half of 2015:

- *Frechter* Complaint at ¶26: Later in the day [on March 19, 2015], the Company held a conference call with investors where Defendant Crowley represented that the ***Company and the FDA had agreed that the Company would seek a "Subpart H approval," thereby availing it to "the benefits of accelerated review and approval." Consequently, the Company anticipated filing the NDA "in the second half of 2015.*** (Emphasis added).

- *Frechter* Complaint ¶28: In the [May 5, 2015] press release, the Company reiterated its "***positive meetings with regulatory authorities in Europe and the United States*** to discuss the approval pathway for migalastat monotherapy for Fabry disease." As a result, the Company ***reinforced its "plans to submit a new drug application (NDA) in the U.S. in the second half of this year***" …(Emphasis added).

- *Frechter* Complaint ¶29: Defendant Crowley stated [on May 5, 2015] "we're ***actively preparing the new drug application, the NDA submission for the second half of this year***" and that the "next interaction with the FDA will be a pre-NDA meeting in the middle of this year to finalize the details of the NDA." (Emphasis added).

- *Frechter* Complaint at ¶¶33-34: The Registration Statement [filed June 12, 2015] contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading. In particular, the Registration Statement represented the following concerning the status of the Company's NDA for Galafold: ***We plan to submit a new drug application ("NDA") to the FDA in the second half of 2015.*** (Emphasis added).

- *Frechter* Complaint at ¶39: The Form 10-Q [filed on August 5, 2015] also represented the following concerning the Company's NDA: In the United States, the Company plans to ***conduct a pre-new drug application ("NDA") meeting with the U.S. Food and Drug Administration ("FDA") and to submit an NDA for Galafold under Subpart H***

4

> *(accelerated approval) in the second half of 2015 for accelerated approval*. (Emphasis added).

- *Lifestyle* Complaint ¶ 22 and *Frechter* Complaint at ¶41:  On September 15, 2015 "Amicus **remains on track to submit** an NDA in the fourth quarter of 2015 under Accelerated Approval, which is only available to therapies for severe and life-threatening conditions that address significant unmet medical needs." (Emphasis added).

Thus, even if such inquiry was proper (and it is not), there are no conflicts in the case theories, spanning a relatively brief time frame, that would render the Public Pension Plans so atypical as to not satisfy the *prima facie* typicality showing called for under the PSLRA's lead plaintiff provisions. Brenner's reliance on *In re BP Sec. Litig.*, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010) on this point is misplaced and, in any event, that decision supports the appointment of the Public Pension Funds as the lead plaintiff.[2] In *BP,* the Court appointed as lead plaintiff the movant with the largest loss in the extended, almost five year long class period. 758 F. Supp. 2d at 437.  The *BP* Court also considered whether to create a *sub-class* and appoint a lead plaintiff to represent a sub-class of investors who purchased during a one-year period subsumed within the extended class period. *Id.*  Because of the differing allegations that arose throughout the lengthy, multi-year class period at issue in the *BP* litigation, the *BP* Court found a conflict of substantial magnitude warranting a creation of a sub-class and appointment of another lead plaintiff for that sub-class. *Id.*  Here, there are no differing facts or events, or conflicting legal theories.  Rather, this Action involves a narrow seven-month period during which Defendants made and perpetuated the same falsehoods about its pathway for Galafold's NDA. The theory of wrongdoing throughout the Operative Class Period, including within the Short Class Period, is consistent throughout and, as a result, the Public Pension Funds do not have interests that are

---

[2] Brenner's reliance on *MGIC* and *Centerline* is similarly misplaced as courts in both cases opted for the movant with the largest loss during the most inclusive class period.

5

antagonistic to, nor atypical of the Class. The record shows that the Public Pension Funds were harmed because they purchased Amicus common stock during the Operative Class Period and their legal and remedial theories have the same characteristics as the Class's claims.

Moreover, a lead plaintiff movant is not rendered antagonistic or atypical because they did not purchase after each and every misrepresentation alleged during a class period. "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). "[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* Courts reject a "requirement that a different lead plaintiff be appointed to bring every single available claim" because that "'would contravene the main purpose of having a lead plaintiff-namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id.* at 82 n.13. Importantly, and what is contemplated by the PSLRA, is that the Public Pension Funds can add named plaintiffs to the operative complaint. *Id.* at 83 ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class."); *In re World Com, Inc. Sec. Litig.,* 294 F. Supp. 2d 392, 421 (S.D.N.Y. 2003) (recognizing that the PSLRA lead plaintiff procedure was "not intended to substitute for the class certification process").

The Public Pension Funds recognize that if appointed lead plaintiff they would owe "a fiduciary duty to the class" and "[d]ifferent interests need not necessarily constitute fatal conflicts." *Newby v. Enron Corp. (In re Enron Corp., Sec. Litig.),* 206 F.R.D. 427, 448 & n.18 (S.D. Tex. 2002) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50 (1949)). In *Enron,* the court appointed Regents of the University of California to represent all equity and debt securities purchasers even though Regents had no debt securities claim. *Id.* at 448 & 459.

6

The *Enron* court rejected the argument that the differences between the equity and debt groups created "every incentive to omit altogether, or minimize, the damages suffered by [debt purchasers]" and "interests in division of any settlement would be antagonistic." *Id.* at 448 (equity purchaser could represent debt purchasers even though theories of causation, damages, liability, claims and burden of proof differed). Contrary to the positions taken by Brenner, the record reflects no inability or unwillingness by the Public Pension Funds or its selected counsel, Chimicles & Tikellis LLP, to pursue recovery for all investors within the Operative Class Period and to fulfill their fiduciary obligations. *See* ECF No. 24-3, Pratsinakis Decl., at Ex. E, Joint Declaration ("We each understand that we owe a fiduciary duty to all members of the proposed Class to provide fair and adequate representation and intend to work with one another and counsel to obtain the largest recovery for the Class.").

Finally, Brenner wrongly asserts that the Public Pension Funds are "unrelated" (Brenner Op. Br. at 4, 13), but this statement is belied by the present record. (*See* Joint Declaration, ¶¶6, 11-12, at Ex. E to the Pratsinakis Decl.). Even assuming *arguendo* that no relationship existed among the Public Pension Funds before this Action, which is not the case here, a pre-existing relationship is not mandated by the PSLRA. *See In re Vonage Initial Public Offering (IPO) Secs. Litig.,* No. 07-cv-177, 2007 U.S. Dist. LEXIS 66258, at *20 (D.N.J. Sept. 6, 2007) ("A 'group of persons' is explicitly allowed to serve as lead plaintiff… [and] [t]his group of persons need not be related in some manner.") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and citing to *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001)); *Centerline*, 2008 U.S. Dist. LEXIS 36406, at *8 ("Groups of unrelated investors are acceptable [under the PSLRA]…."). Thus, Brenner's assertion about the Public Pension Funds' relationship before this Action arose is not only false as a matter of fact, but also irrelevant as a matter of law.

In short, no conflicting legal theories exist here and Brenner has failed to present any proof sufficient to overcome the Public Pension Funds' showing of typicality and adequacy.

## **CONCLUSION**

For all the foregoing reasons, and those set forth in the Public Pension Funds' papers (ECF Nos. 24, 30), the Public Pension Funds respectfully request the Court grant their Motion.

Dated:  December 28, 2015                    Respectfully submitted,

/s/Kimberly Donaldson Smith
Kimberly Donaldson Smith (NJ-015041999)
Catherine Pratsinakis (NJ-030152001)
Christina Donato Saler (NJ-022402003)
  CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Ave.
Haverford, PA 19041
(610) 642-8500
kds@chimicles.com
cp@chimicles.com
cds@chimicles.com

*Counsel for Public Pension Funds and Proposed Lead Counsel for the Class*

8

## **CERTIFICATE OF SERVICE**

  I, Kimberly Donaldson Smith, hereby certify that on December 28, 2015, a copy of the Reply Memorandum of Law in Support of the Public Pension Funds' Motion for Appointment as Lead Plaintiff, was served upon counsel of record via the CM/ECF system.

                 */s/ Kimberly Donaldson Smith*