Mark C. Gardy                              Jeffrey C. Block
Jennifer Sarnelli                          Jacob A. Walker
**GARDY & NOTIS, LLP**                     **BLOCK & LEVITON LLP**
560 Sylvan Avenue, Suite 3085              155 Federal Street, Suite 400
Englewood Cliffs, NJ 07632                 Boston, MA 02110
Tel: (201)567-7377                         Tel: (617)398-5600
Fax: (201)567-7337                         Fax: (617)507-6020

*Counsel for Proposed Lead Plaintiff and*
*Proposed Liaison and Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIFESTYLE INVESTMENTS, LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AMICUS THERAPEUTICS, INC., AND JOHN F. CROWLEY, <br><br> Defendants. | Case No. 3:15-cv-07350-FLW-DEA |

|  |  |
|---|---|
| GARY FRECHTER, on behalf of himself and all others similarly situated, | Case No. 3:15-cv-07380-FLW-DEA |
| Plaintiff, | |
| v. | |
| AMICUS THERAPEUTICS, INC., JOHN F. CROWLEY, and JAY A. BARTH, | |
| Defendants. | |
| MICHAEL R. HARVEY, individually and on behalf of all others similarly situated, | Case No. 3:15-cv-07448-FLW-LHG |
| Plaintiff, | |
| v. | |
| AMICUS THERAPEUTICS, INC. and JOHN F. CROWLEY, | |
| Defendants. | |

**DR. BARRY BRENNER'S REPLY IN SUPPORT
OF HIS MOTION TO CONSOLIDATE ALL RELATED
ACTIONS AND FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD AND LIAISON COUNSEL**

# **TABLE OF CONTENTS**

A.    Contrary To The Combined Funds
      Assertions, Dr. Brenner Seeks To Represent
      Investors Throughout The Entire Class Period . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Dr. Brenner Does Not Suggest A "Freewheeling
      Comparison Of The Parties," But Rather Shows Why,
      Under The PSLRA, He Should Be Named Lead Plaintiff . . . . . . . . . . . . 3

C.    There Is A Conflict Between The
      Combined Funds And Other Members
      Of The Class That Renders The Funds Inadequate . . . . . . . . . . . . . . . . . . 7

D.    The Combined Funds Citation To *Hevesi*
      Is Inapposite, And Raises Serious Concerns
      That The Combined Funds Are Attempting An
      End-Run Around The PSLRA's Lead Plaintiff Procedures . . . . . . . . . . . 8

E.    Dr. Brenner Alone Is A Suitable
      Lead Plaintiff, But In Any Event, The Court
      Should At Least Appoint Dr. Brenner As Either
      Co-Lead Plaintiff Or Lead Plaintiff Of A Short Period Sub-Class . . . . . . 11

F.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Hevesi v. Citigroup, Inc.,*
  366 F.3d 70 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re BP plc Securities Litig.,*
  758 F.Supp.2d 428 (S.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12

*In re Cable and Wireless, plc Securities Litig.,*
  217 F.R.D 372 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*In re Vonage Initial Pub. Offering Securities Litig.,*
  No. 07-177(FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sep. 7, 2007) . . . . 5, 12

*Weisz v. Calpine Corp.,*
  2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) . . . . . . . . . . . . . . . . . 12

*Yousefi v. Lockheed Martin Corp.,*
  70 F.Supp.2d 1061 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

Private Securities Litigation Reform Act,
  15 U.S.C. § 78u-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Dr. Barry Brenner submits this memorandum in further support of his motion for appointment as Lead Plaintiff[1] in this securities class action against Amicus Therapeutics, Inc. ("Amicus"), John F. Crowley and Jay A. Barth ("Defendants"), and in opposition to the Combined Funds[2] motion[3] and opposition,[4] filed in the three above-captioned cases. bContrary to the Combined Funds' briefing, Dr. Brenner seeks to represent investors who purchased in *both* the Short and Long Periods, and has aptly shown why he should be named Lead Plaintiff.

### A.   Contrary To The Combined Funds Assertions, Dr. Brenner Seeks To Represent Investors Throughout The Entire Class Period

The Combined Funds argue in their opposition that Dr. Brenner "take[s] the position that losses should be calculated using the [Short Period]," and similarly argue that Dr. Brenner seeks to "leave out thousands of defrauded investors who have Exchange Act claims . . .". (Combined Funds Opp. at 6, 8.)  Not so.  Contrary to the Combined Funds unsupported speculation, Dr. Brenner seeks to represent investors throughout the *entire* class period—running from March 19, 2015 through October 1, 2015.  Dr. Brenner does not believe (nor has he anywhere

---

[1] ECF No. 23 (references to "ECF No." refer to the *Lifestyle Investments* docket unless otherwise indicated).

[2] Defined terms have the same definition as those in Dr. Brenner's Opposition (ECF No. 23.)

[3] ECF No. 24.

[4] ECF No. 30.

stated) that *only* the Short Period claims should be prosecuted, nor would his appointment as Lead Plaintiff prevent him from filing a consolidated amended complaint with claims for both Class Periods.  Indeed, as shown in Dr. Brenner's opposition, Dr. Brenner suffered more losses during the Long Period than *any other individual lead plaintiff applicant*, including any of the Combined Funds. (*See* Brenner Opp.[5] at 8-9.)  Dr. Brenner does not seek to "shrink the kingdom until [he is] king," (Combined Funds Opp. at 7); he seeks to bring *all available claims on behalf of all class members*, and he is best situated to do so.

Indeed, Dr. Brenner has all of the incentive in the world to prosecute every viable securities fraud claim available to the class, including claims from March 19, 2015 through September 14, 2015 *and* claims from September 15, 2015 through October 1, 2015.  Of Dr. Brenner's $193,274 in total losses, $136,494— over 70% of Dr. Brenner's total losses—come from the pre-September 15, 2015 period.  The Combined Funds, however, have an incentive—and standing—only to prosecute claims pre-September 15 because they have *no transactions in Amicus stock during the Short Period*.  If anyone would be "improperly leav[ing] out thousands of defrauded investors who have Exchange Act claims," (Combined Funds Opp. at 9), it would be the Combined Funds, not Dr. Brenner.

---

[5] ECF No. 31.

The Combined Funds also state that they "seek to represent the same putative class defined in the PSLRA Notice and complaints filed," (Combined Funds Opp. at 3), but fail to grapple with the fact that they *cannot represent* class members who have claims for stocks purchased during the Short Period.  While Dr. Brenner *does* seek to "represent the same putative class" as defined in the PSLRA Notice (those who purchased shares between March 19, 2015 and October 1, 2015, inclusive), the Funds *cannot* represent class members who have claims related to Amicus's September 15, 2015 press release and the ensuing October 2, 2015 corrective disclosure *about that September 15, 2015 press release*.  (Brenner Opp. 17-22.)  If the Combined Funds are appointed sole Lead Plaintiff, investors who purchased Amicus shares in the post-September 15 period will not have their interests adequately represented.

**B.    Dr. Brenner Does Not Suggest A "Freewheeling Comparison Of The Parties," But Rather Shows Why, Under The PSLRA, He Should Be Named Lead Plaintiff**

The Combined Funds argue that Dr. Brenner has asked this Court to "abandon the PSLRA's statutory regime in favor of improperly asking the Court to weigh case theories and a 'freewheeling comparison of the parties competing for lead plaintiff.'"  (Combined Funds Opp. at 3.)  Again, not so.  Instead, Dr. Brenner has explained why there are *four* separate, independently dispositive reasons why

he should be appointed Lead Plaintiff under the very PSLRA framework the Combined Funds accuse Dr. Brenner of abandoning.  To wit:

*First,* Dr. Brenner should be named Lead Plaintiff because the Court has the discretion to not allow the four unrelated pension funds to aggregate their losses for the purpose of determining which applicant has the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb).  Because Dr. Brenner has higher losses than *any individual lead plaintiff applicant in the Short and Long Period*, he is entitled to the PSLRA's Lead Plaintiff presumption.  (*See* Brenner Opp. at 10-13.)

*Second*, even if the Court allows the Funds to aggregate their losses, the Court has the discretion under the PSLRA to consider *both* the Short and Long Periods as the appropriate yardstick for measuring losses.  *In re Cendant Corp. Litigation.*, 264 F.3d 201, 262 (3d Cir. 2001).  If the Court considers both periods, Dr. Brenner has the largest losses in the Short Period and significant losses in the Long Period, which outweigh the Combined Funds slightly larger aggregated losses in the Long Period and *complete lack of any purchases at all* during the Short Period.  This is an independently sufficient basis to name Dr. Brenner as Lead.  (*See* Brenner Opp. at 13-16.)

*Third*, even if the Court allows aggregation and only uses the Long Period to measure losses, the Combined Funds are not entitled to the PSLRA's presumption

because they fail to make the necessary *prima facie* showing of typicality and adequacy the Court is required to examine under the PSLRA. In making its own independent determination, the Court can look to "the pleadings that have been filed, the movant's application, and any other information that the Court required to be submitted." *In re Vonage Initial Pub. Offering Securities Litig.*, No. 07-177(FLW), 2007 U.S. Dist. LEXIS 66258, at *18 (D.N.J. Sep. 7, 2007) (Wolfson, J.). The pleadings filed in this case establish that the claims related to Amicus's September 15, 2015 press release are distinct from other claims, (*see* Brenner Opp. at 14-16), and the Combined Funds application make clear that the funds *do not have standing to raise claims related to the September 15, 2015 press release*. The Combined Funds inability to make out the PSLRA's required *prima facie* showing of adequacy and typicality is a third independently sufficient reason to appoint Dr. Brenner as Lead Plaintiff. (*See* Brenner Opp. at 17-20.)

*Fourth*, even if the Court allows aggregation, looks only to the Long Period to measure losses, and determines that the Funds have made a *prima facie* showing, Dr. Brenner has rebutted any presumption in favor of the Funds serving as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Dr. Brenner has shown why the Combined Funds are not incentivized to prosecute claims related to Amicus's September 15, 2015 press release, which are undoubtedly *strong* claims in this case. This lack of incentive could lead the Funds to prejudice absent class

members by the Funds "manner of drafting a consolidated complaint, defending motions to dismiss, and conducting discovery." *In re BP plc Securities Litig.,* 758 F.Supp.2d at 428, 438 (S.D. Tex. 2010). (*See* Brenner Opp. at 20-22.)

Far from abandoning the PSLRA, Dr. Brenner has explained four separate, independently dispositive reasons that the PSLRA's framework leads to the conclusion that *he* should be named Lead Plaintiff.

Tellingly, the Combined Funds cite to *In re BP plc Sec. Litig.*, 758 F.Supp.2d at 433-35, for the proposition that the "longest, noticed class period" applies to the selection of lead plaintiff. (Combined Funds Opp. at 7.) However, as explained in detail in Dr. Brenner's opposition, the Court in *BP*, a case cited with approval by the Combined Funds, addressed the very concerns present in this case and found that a lead plaintiff applicant situated similarly to the Combined Funds here was not adequate because of divergent theories in the case. (Brenner Opp. at 19-20 (citing *In re BP*, 758 F. Supp. 2d at 438) ("Absent class members could be prejudiced by [the Combined Funds] manner of drafting a consolidated complaint, defending motions to dismiss, and conducting discovery. Accordingly, the Court cannot with confidence find that 'the Combined Funds] claims have the "same essential characteristics" as those other class members, or that no significant conflicts exist between [the Combined Funds] and other class members as a result of differences in their claims.")). While the Court in *BP* ultimately appointed both

applicants as co-lead plaintiffs of an overall class and a subclass, as discussed below, there is no need to do so in this case because Dr. Brenner satisfies the standing requirements for *all* claims in *both* proposed class periods.  Unlike in *BP*, here, Dr. Brenner does not have any "divergent theories" with other members of the Class.  The Combined Funds, however, do have a "divergent theor[y]," because they lack standing to bring the post-September 15 claims.

Furthermore, this is not a case where Dr. Brenner is putting forward a unique or niche theory in hopes to carve out a smaller subclass that only he can control. Instead, both Dr. Brenner and the Combined Funds recognize the differences in pre- and post-September 15 claims and Dr. Brenner is the only Lead Plaintiff applicant with standing to assert claims for both periods.  Unlike the Combined Funds, who are neither typical nor adequate of the *entire* class, Dr. Brenner is.

Finally, as discussed further below, the Court could also appoint Dr. Brenner as a Co-Lead Plaintiff with the Combined Funds or create a Subclass of post-September 15 purchasers, insuring that a Lead Plaintiff with a large financial interest has standing to assert the post-September 15 claims.

### C.   There Is A Conflict Between The Combined Funds And Other Members Of The Class That Renders The Funds Inadequate

The Combined Funds gloss over the serious conflicts that exist between them and members of the Class who purchased shares on or after September 15, 2015, stating simply, and without *any* support, "the Public Pension Funds satisfy

the adequacy requirements because there are no conflicts between them and other the [sic] members of the Class." (Combined Funds Opp. at 10.) But just saying it is so does not make it so. In both their initial application and their opposition, the Combined Funds have simply failed to grapple with the serious conflict that exists because of their lack of standing to bring claims related to Amicus's September 15, 2015 press release. Nor do the Combined Funds grapple with the fact that the October 2, 2015 corrective press release *undisputedly* relates back to the September 15, 2015 press release at the heart of the *Lifestyle Investments* and *Harvey* complaints. (*See* Brenner Opp. at 13-16.) The Combined Funds unwillingness to acknowledge, much less critically grapple with, the facts and circumstances related to the September 15 press release is a perfect illustration of the conflict between the Combined Funds and members of the Class who purchased securities during in the Short Period.

### D.   The Combined Funds Citation To *Hevesi* Is Inapposite, And Raises Serious Concerns That The Combined Funds Are Attempting An End-Run Around The PSLRA's Lead Plaintiff Procedures

The Combined Funds cite to *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) for the proposition that a lead plaintiff does not need standing "to sue on every available cause of action." (Combined Funds Opp. at 10.) But *Hevesi* is inapposite, and dealt with a situation completely unlike the one at bar. In *Hevesi*, *Defendants* appealed a district court's decision to certify a class because the

District Court allowed an *additional* plaintiff to be named to add *additional* causes of action to a case *after a lead plaintiff had already been named*, and that additional plaintiff was not subject to lead plaintiff scrutiny under the PSLRA. *Id.* at 73-74, 81-82. The Court concluded that the PSLRA does not prevent the "addition of named plaintiffs," and allowed the class to be certified. *Id.* This unremarkable proposition is of no help to the Combined Funds, as the Court is currently engaging in the PSLRA lead plaintiff appointment process, and is faced with an applicant in the Combined Funds who have *no* standing for an essential, existing, and already-pleaded claim of the proposed class, and another plaintiff in Dr. Brenner who *does have standing* to bring *all* of the class's already-pleaded claims.

Perhaps the Combined Funds meant to elliptically suggest with their citation to *Hevesi* that the Court should turn a blind-eye to the Combined Funds standing and adequacy problems now and appoint them as Lead Plaintiff, and then later allow the Funds (or, more specifically, the Combined Funds' counsel) to cure this problem by *later* adding another plaintiff with post-September 15 standing.[6] Even if the Combined Funds pre-September 15 claims are later dismissed, the argument

---

[6] One potential problem with this scenario would occur *if* the claims for the Long Period are dismissed. The Combined Funds would have no standing and no interest in prosecuting the case, yet their counsel would continue to be lead counsel and the only investor left with standing, and the ability to control the case, would then be some yet unknown investor who undoubtedly has smaller losses than Dr. Brenner in the Short Period.

goes, Lead Counsel can simply add any other plaintiff and continue on prosecuting the case.  If *that* is what the Combined Funds mean to suggest, then the Court should not countenance such a transparent end-run against the PSLRA's lead plaintiff appointment procedure.  The Combined Funds adequacy and typicality rises and falls as to them and they cannot rely on someone else to cure their inadequacies and atypicality.  Dr. Brenner is present now, has the largest individual loss of any individual applicant during either class period, and has standing to bring *all* class claims that are already pleaded.

Allowing the Combined Funds to move forward and simply name any party with standing to bring the post-September 15 claims as an additional named plaintiff at a later stage in the litigation would represent a complete end-run around the PSLRA.[7]  This would allow the Combined Funds and their choice of counsel to control a litigation that they potentially have *no* interest in (if, for example, only the post-September 15, 2015 claims survive a motion to dismiss).  Moreover, there is no need for such machinations where Dr. Brenner meets the requirements of the

---

[7] Should the Combined Funds attempt on reply to add to their "group" another investor who purchased post-September 15, it would only add to the evidence that the Combined Funds are inadequate to assert claims on behalf of the entire class, and would raise questions as to the *bona fides* of their group.  *See In re Cendant Corp. Litig.*, 264 F.3d at 267  ("If . . . a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."

PSLRA.  This is not a situation, such as the one the Second Circuit faced in *Hevesi*, where *additional* claims were added *after* the PSLRA lead plaintiff process had been completed.  Here, the Court has full knowledge of the post-September 15 claims, and full knowledge that the Combined Funds do not now and will never have standing to bring those claims.  Under these circumstances, it would be inappropriate to allow the Combined Funds to game the PSLRA in this manner.

### E.   Dr. Brenner Alone Is A Suitable Lead Plaintiff, But In Any Event, The Court Should At Least Appoint Dr. Brenner As Either Co-Lead Plaintiff Or Lead Counsel Of A Short Period Sub-Class

Finally, the Combined Funds argue that there is "no need for co-lead plaintiffs." (Combined Funds Opp. at 11).  Dr. Brenner agrees—where there is an applicant who (a) has the largest losses of any individual applicant during the Class Period, and (b) has standing to bring *all* claims pleaded by the Class, there is simply no need to appoint anyone else as Lead besides Dr. Brenner.

If, however, the Court concludes that the Combined Funds should serve as Lead Plaintiffs (and, for all the reasons described in Dr. Brenner's opposition and above, the Court should not), the Court *should* appoint a co-lead plaintiff that has standing to bring claims related to Amicus's September 15 press release, and Dr. Brenner is the most appropriate applicant to be so-named.  Dr. Brenner suffered larger losses during the Short Period than any other applicant, and is adequately incentivized to control and monitor the entire litigation, including the prosecution

of the post-September 15 claims.  If the Court is inclined to name the Combined Funds as Lead Plaintiffs, they should also name Dr. Brenner and his choice of counsel as Co-Lead Plaintiffs and Co-Lead Counsel.  *See, e.g., Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *8 (N.D. Cal. Aug. 19, 2002) ("The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action); *In re Cable & Wireless, plc Securities Litig.*, 217 F.R.D 372, 376 (E.D. Va. 2003) (same); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp.2d 1061, 1071 (C.D. Cal. 1999) (same).

In the alternative, as the Court was prepared to do in *Vonage* and as the court did in *In re BP Sec. Litig.*, the Court can appoint Dr. Brenner as Lead Plaintiff of a sub-class of investors who purchased Amicus shares between September 15, 2015 and October 1, 2015.  As this Court recognized in *Vonage*, naming a separate class of pre-IPO investors who had a different legal theory was appropriate because "the typicality of the [pre-IPO] investors is different from the class that other movants in the present matter are seeking to represent.  Most importantly, for the purposes of settlement, it would appear that [pre-IPO] investors' claims could be negotiated separately, thus, more effectively."  *Vonage*, 2007 U.S. Dust. LEXIS 66258, at * 43.  This Court declined to appoint a subclass in *Vonage* only because it expressed "concerns regarding the size and unrelatedness of members of the" pre-

12

IPO Group.  *Id.*  No such concerns exist here as Dr. Brenner is a single individual with the largest financial interest in the Short Period.  *See also In re BP Sec. Litig.* 758 F. Supp. 2d at 442 ("[t]he Court's foremost concern at this stage is to preserve the claims of all potential class members.")

### F.    Conclusion

For the reasons set forth herein, Dr. Brenner should be appointed as the Lead Plaintiff and his selection of counsel appointed as Lead and Liaison Counsel.

Dated: December 28, 2015

GARDY NOTIS, LLP
*Counsel for Proposed Lead Plaintiff and Proposed Liaison Counsel for the Class*

By:    /s/ Jennifer Sarnelli
        Jennifer Sarnelli

Mark C. Gardy
Jennifer Sarnelli
**GARDY & NOTIS, LLP**
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, NJ 07632
Tel: (201)567-7377
Fax: (201)567-7337

Jeffrey C. Block
Jacob A. Walker
**BLOCK & LEVITON LLP**
*(pro hac vice motions pending)*
155 Federal Street, Suite 400
Boston, MA 02110
Tel: (617)398-5600
Fax: (617)507-6020