# UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

### (609) 989-2182

CHAMBERS OF
FREDA L. WOLFSON
UNITED STATES DISTRICT JUDGE

Clarkson S. Fisher Federal Building &
U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## **LETTER OPINION**

May 26, 2016

Laurence M. Rosen, Esq.
The Rosen Law Firm, PA
609 W. South Orange Avenue
Suite 2P
South Orange, NJ 07079

Jeffrey W. Herrmann, Esq.
Cohn, Lifland, Pearlman,
Herrmann & Knopf, LLC
Park 80 West- Plaza One
250 Pehle Avenue, Suite 401
Saddlebrook, NJ 07663

Seth Ptasiewicz, Esq.
Kroll, Heineman Carton LlLC
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, NJ 08830

Eduard Korsinsky, Esq.
Levi & Korsinsky LLP
30 Broad Street
24th Floor
New York, NY 10004

James E. Cecchi, Esq.
Carella Byrne Cecchi Olstein Brody
& Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068

James Stuart Notis, Esq.
Gardy & Notis
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

Jennifer Sarnelli
Gardy & Notis, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

Catherine Pratsinakis
Chimicles & Tikellis LLP
361 W. Lancaster Avenue
Haverford, PA 19041

Kimberly M. Donaldson Smith, Esq.
Chimicles & Tikellis
361 West Lancaster Avenue
Haverford, PA 19041

Angelo A. Stio , III, Esq.
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543-5276

Brian Ronald Zurich, Esq.
Pepper Hamilton LLP
301 Carnegie Center, Suite 400

Robert L. Hickok, Esq.
Pepper Hamilton, LLP
3000 Two Logan Square

Princeton, NJ 08543

18th & Arch Streets
Philadelphia, PA 19103-2799

Scott David Musoff, Esq.
Skadden Arps Slate Meagher &
Flom LLP
4 Times Square
New York, NY 10036

> **RE:**   **Lifestyle Investments, LLC v. Amicus Therapeutics, Inc., et al.**
> **Civil Action No.: 3:15-cv-7350 (FLW) (DEA)**
>
> **Frechter v. Amicus Therapeutics, Inc., et al.**
> **Civil Action No.: 3:15-cv-7380 (FLW) (DEA)**
>
> **Harvey v. Amicus Therapeutics, Inc., et al.**
> **Civil Action No.: 3:15-cv-07448 (FLW) (LHG)**

Dear Litigants:

This matter has been opened to the Court by (1) Plaintiff Gary Frechter, through his counsel, Jeffrey W. Herrmann, Esq.; (2) Plaintiff James Kerrigan, through his counsel Eduard Korsinsky, Esq.; (3)  Plaintiffs Bernard Kijet and Kevin Gilbo, through their counsel, James E. Cecchi, Esq., (4) Plaintiff Dr. Barry Brenner, through his counsel, James Stuart Notis, Esq.,; and (5) Plaintiffs Southeastern Pennsylvania Transportation Authority ("SEPTA"), Bucks County Employees Retirement Fund ("BCERF"), Chester County Employees Retirement Fund ("CCERF"), and Delaware County Employees Retirement Fund ("DCERF") (collectively "Public Pension Funds"), by their counsel, Catherine Pratsinakis, Esq., and Kimberly M. Donaldson Smith, Esq., on competing motions to be appointed lead plaintiff and to approve lead counsel.[1]   These plaintiffs also move to consolidate the above-referenced matters.   For the reasons set forth herein, these actions are consolidated; Dr. Barry Brenner is appointed as lead plaintiff; Block & Leviton, LLP is designated as Lead Counsel; and Gardy Notis, LLP is designated as Liaison Counsel.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to the present motion are taken from the Complaint and the declarations attached to the motions.

Amicus is a "biotechnology company at the forefront of therapies for rare and orphan diseases," that "has a robust pipeline of advanced therapies for a broad range of human genetic

---

[1]  The Court notes that Plaintiffs Frechter, Nicola Diligu, and Maria Baldi each previously filed motions to be appointed lead plaintiff, respectively, all of which were subsequently withdrawn.  In these withdrawals, Frechter did not identify an alternative candidate for lead plaintiff, Digilu indicated she supported the Public Pension Funds as lead plaintiff, and Baldi indicated she supported Dr. Brenner as lead plaintiff.

diseases."   No. 15-7350, Compl. ¶ 14.   John F. Crowley is the Chairman and Chief Executive Officer of Amicus.   *Id.* at ¶ 15.   Jay A. Barth is the Chief Medical Officer of Amicus.   No. 15-7380, Compl. ¶ 14.   (Amicus, Crowley, and Barth are referred to collectively herein as "Defendants").

On September 15, 2015, Amicus issued a press release describing a meeting that occurred that same day with the Food and Drug Administration ("FDA") regarding Amicus's migalastat therapy for the treatment of Fabry disease.   The press release described the meeting as "collaborative," and stated that it was a "great example of FDA and industry working together to advance innovative therapies for people living with debilitating genetic disorders."   No. 15-7350, Compl. ¶ 3.   The press release also stated that, based on the guidance provided by the FDA during the meeting, the meeting "further reinforce[d] our confidence in [Amicus' new drug application] package and post-marketing confirmatory study [that Amicus is] preparing for submission by the end of this year."   *Id.* at ¶ 4.

However, plaintiff investors allege that the press release contained statements that were materially false and/or materially misleading when made.   *Id.* at ¶ 6.   Specifically, the investors allege that at the September 15 meeting, the FDA expressed concerns about Amicus' forthcoming new drug application ("NDA") for migalastat and, as a result, Amicus had no basis for "confidence" in the study and for "preparing for [its] submission by the end of this year."   *Id.* at ¶ 6.   Plaintiffs further allege that on October 2, 2015, Amicus admitted, through a press release published before the market opened, that it would not be in a position to submit its NDA by year-end 2015.   *Id.*   According to the Complaint, Amicus stock plummeted more than 50% on this news.   *Id.* at ¶ 7.

In October 2015, these three lawsuits were filed, which allege two putative class periods.[2] Both the Lifestyle Action, Civil Action No. 15-07350, and the Harvey Action, Civil Action No. 15-07448, allege class periods running from September 15, 2015, the day Amicus positively reported on its FDA meeting, through October 1, 2015, the day on which Amicus stated that it would not submit its NDA by year-end 2015 due to negative feedback from the FDA.   The Frechter Action, Civil Action No. 15-7380, alleges a class period running from March 19, 2015, when Amicus allegedly falsely stated, among other things, "Amicus plans to schedule a pre-NDA meeting and to submit an NDA under Subpart H in the second half of 2015," No. 15-7380, Compl. ¶ 24, through October 1, 2015.

The Complaint in the Lifestyle and Harvey Actions assert two counts:   (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 (against Amicus and Crowley), and (2) violation of Section 20(a) of The Exchange Act (against Crowley).   The Complaint in the Frechter Action similarly asserts those two counts, but against Barth as well:   (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 (against all Defendants), and (2) violation of Section 20(a) of The Exchange Act (against Crowley and Barth).

---

[2] *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc., et al.*, No. 3:15-cv-07350 (D.N.J. Oct. 7, 2015); *Frechter v. Amicus Therapeutics, Inc.*, et al., No. 3:15-cv-07380 (D.N.J. Oct. 8, 2015); and *Harvey v. Amicus Therapeutics, Inc., et al.*, No. 3:15-cv-07448 (D.N.J. Oct. 13, 2015).

−3−

On December 7, 2015, the instant motions to appoint lead plaintiffs, lead counsel, and to consolidate these matters were filed by various plaintiffs.  On December 21, 2015, Defendants filed a response to these motions indicating that they (1) do not object to consolidation of the matters, (2) take no position on the appointment of lead plaintiff or lead counsel, but request that such appointments be made without prejudice in connection with class certification; and (3) object to provisions included in Kerrigan's and Dr. Brennan's proposed orders relating to document preservation, arguing that such provisions are duplicative of the obligation to preserve relevant documents set forth in the PSLRA, 15 U.S.C. § 78u-4(b)(3)(C)(i).

## II.   MOTIONS TO CONSOLIDATE

Movants seek consolidation of the related actions in this case.  As noted above, Defendants do not oppose consolidation of these matters.   Federal Rules of Civil Procedure 42(a) provides:

> When actions involving common questions of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a); *see also Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 103 n. 3 (3d Cir. 1988) (consolidation is appropriate where there are actions involving common questions of law or fact), *cert. denied*, 489 U.S. 1078 (1989); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 454 (D.N.J. 2000); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80 (D.N.J. 1993) ("Rule 42(a) gives the [D]istrict [C]ourt 'broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice.'").  The PSLRA, moreover, directs that cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims."  15 U.S.C. § 78u-4(a)(3).

Although there are slight differences in the three actions pending before the Court, all actions present similar factual and legal issues.  All three cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants.  There is no dispute that consolidation is appropriate.   Hence, I find that the three matters should be consolidated.

## III.   MOTION FOR LEAD PLAINTIFF

Plaintiffs Kerrigan, Kijet and Gilbo (jointly), Dr. Brenner, and Public Pension Funds have all moved as lead plaintiff.  However, I note that although Kerrigan, Kijet, and Gilbo have not withdrawn their motions to be appointed lead counsel, they have also not filed any opposition to the Public Pension Funds or Dr. Brenner's motions and, accordingly, Kerrigan, Kijet, and Gilbo's motions are deemed abandoned.  *In re Kit Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 444 n.2 (S.D.N.Y. 2013); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 116 (S.D.N.Y. 2010); *see also*

*Hollister v. U.S. Postal Serv.*, 142 F. Appx. 576, 577 (3d Cir. 2005) (where party represented by counsel fails to oppose a motion to dismiss, a district court may treat motion as unopposed and subject to dismissal without a merits analysis).   Therefore, this Court must determine whether the Public Pension Funds or Dr. Brenner should serve as lead plaintiff.

### A.  The PSLRA

The PSLRA governs the appointment of the lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C.A. § 78u-4(a)(1).   Under the PSLRA, the plaintiff who files the initial action must, within 20 days of filing the complaint, publish notice to the class informing class members of the pendency of the action, the claims asserted in the complaint, the class period, and their right to serve as lead plaintiff.   *Id.* at § 78u-4(a)(3)(A)(i); *Fields*, 198 F.R.D. at 455-56. Within 60 days of the publication of the notice, any putative class member may move the court for appointment to serve as lead plaintiff.   15 U.S.C.A. § 78u-4(a)(3)(A)(i)(II).   Within 90 days of the publication of the notice, the court must consider any motion made by a purported class member, and appoint as lead plaintiff the member or members that the court determines to be the "most adequate plaintiff" to represent the interests of the class members.   *Id.* at § 78u-4(a)(3)(B)(i).

The statute establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that has filed the complaint or made a motion in response to the notice to the class; has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.   *Id.* at § 78u-4(a)(3)(B)(iii)(I).   The presumption of adequacy may be rebutted with proof that the presumptively most adequate plaintiff either will not fairly and adequately protect the interests of the class, or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.   *See id.* at § 78u-4(a)(3)(B)(iii)(II).

### B.  Adequacy of the Notice of Pendency

This Court "has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff, the plaintiff with the largest financial stake in the outcome of the litigation, to come forward and take control of the litigation."   *California Pub. Emples. Retirement Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001).   "The fundamental purpose of the § 78u-4(a)(3)(A)(i) notice requirement is to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status."   *Id.* at 576.

[U]nder this section, proper notice must (1) be properly published; (2) advise members of the putative class of the relevant details of (a) the pendency of the action, (b) the claims asserted therein, and (c) the period of the action; and (3) inform putative class members that they have the right to move the district court to serve as lead plaintiff in the class action.

*Id.* at 576-77; *see also In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 147-48 (D.N.J. 2000).

Here, the notice was published in Business Wire on October 7, 2015, within 20 days of the filing of the Complaint in Civil Action No. 15-7350, and the notice informs putative class members of their right to move in the District of New Jersey to serve as lead plaintiff.   Declaration of Laurence M. Rosen, Esq., dated December 7, 2015 [hereinafter "Rosen Decl."], ¶ 2, Ex. 1; *see Fields*, 198 F.R.D. at 456 n.9.   It also advised members of the putative class of the relevant details of the pendency of the action, the claims asserted therein, and the time period of the action.   Rosen Decl. ¶ 2, Ex. 1.   The Court finds that the notice of pendency provides the minimum information necessary to meet the objectives of the PSLRA.[3]

## C.  Largest Financial Loss

With regard to determining which plaintiff has the "largest financial interest," the Third Circuit has held that "district courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."   *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001), *cert. denied sub nom.*, 535 U.S. 929 (2002*)*.   District courts in this Circuit have accorded the "largest financial loss" element the most weight in the analysis for appointment of a lead plaintiff.   *See In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177, 2007 U.S. Dist. LEXIS 66258, *16-17 (D.N.J. Sept. 6, 2007) (citing

---

[3] I note, however, that the notice in this case does not contain information that has been required by other district courts in this Circuit, namely, "the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the Court."   *California Pub. Emples. Retirement Sys.*, 127 F. Supp. 2d at 579; *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. at 147-48.   Nor did the notice published by Block Levinton, LLP on PR Newswire provide this information.   *See* Declaration of Jennifer Sarnelli, Esq. dated December 7, 2015 [hereinafter "Sarnelli Decl."], ¶ 2, Ex. A; Declaration of Catherine Pratsinakis, Esq. dated December 7, 2015 [hereinafter Pratsinakis Decl."], ¶ 2, Ex. A   In any event, a search of this Court's Case Management/Electronic Case Files (CM/ECF) system reveals that, during the 60-day time period set forth in 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), Amicus was identified as a litigant in only these three matters before the District of New Jersey.   Under these factual circumstances, the Court finds that the notice sets forth the minimum information required under the PSLRA to allow members of the putative class to contact the court and obtain additional information needed to decide whether to seek lead plaintiff status.   *See Marsden v. Select Med. Corp.*, No. 04-4020, 2005 U.S. Dist. LEXIS 714, 12 (E.D. Pa. Jan. 18, 2005) (notice is sufficient where, among other things, it contains sufficient information to allow a reader to "independently . . . contact the clerk's office to obtain a copy of the Complaint and discover the procedures for filing a motion").   I stress that this result is purely based on the factual circumstances presented here -- that multiple lawsuits have not been filed against Amicus in the District of New Jersey.   Rather, the best practice is for litigants to include all of the identifying information they possess at the time the notice is published, which should include the caption of the case, docket number, and vicinage in which the matter was filed.

cases).

Dr. Brenner claims an ultimate loss of $193,274.45 during the two putative class periods.[4] Sarnelli Decl. ¶¶ 4, 5 Ex. C, D.   Public Pension Funds claims that, collectively, they purchased "nearly 79,000 shares," which ultimately resulted in a loss of $224,298.[5]   Pratsinakis Decl. ¶ 2, Ex.'s C, D.   Importantly, the Public Pension Funds are not a single entity, but a collection of four separate entities which joined together for the purpose of serving as lead plaintiff in this litigation. *See* Pratsinakis Decl. ¶ 2, Ex. E, ¶ 8.   Individually, none of the four entities comprising the Public Pension Funds group has a loss larger than that of Dr. Brenner, and even if aggregated, their loss is only approximately $30,000 more than Dr. Brenner's individual loss.

The PSLRA allows for the appointment of "the person or group of persons that . . . has the largest financial interest in the relief sought by the class" as the lead plaintiff.   15 U.S.C. § 78u-4(a)(3)(B)(iii).   The Third Circuit has expressly held that the PSLRA contains "no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"   *In re Cendant*, 264 F.3d at 266.   Thus, while relatedness might be relevant to that inquiry, it is not a substitute for determining whether the group would fairly and adequately protect the interests of the class.   *Id.* at 266-67; *see Chao Sun v. Han*, No. 15-703, 2015 U.S. Dist. LEXIS 64060, *9-10 (D.N.J. May 14, 2015).   By way of example, the Third Circuit explained that where a group is cobbled together by attorneys to ensure their eventual appointment as lead counsel, this may justify a finding that the members of that group could not be relied on to monitor counsel in a sufficient manner.   *In re Cendant*, 264 F.3d at 267.   Further, the Court explained that an unrelated group of plaintiffs could, at some point, become too large to represent the class in an adequate manner.   *Id.*   Although the Third Circuit declined to establish a "hard-and-fast" rule as to what number would be too large, noting that "a kind of 'rule of reason' prevails," it explained that "courts should generally presume that groups with more than five members are too large to work effectively."   *Id.*

Here, the Court finds that the Public Pension Funds, which are comprised of four separate entities, have not shown that they will adequately protect the interests of the putative class and, accordingly, I will not permit the Public Pension Funds to aggregate their losses to achieve the largest financial loss.   In their joint declaration, the various principals of the underlying funds aver that, although SEPTA's governing board has included representatives appointed by the Commissioners of Bucks, Chester, and Delaware counties, the decision for the underlying funds to join together as the "Public Pension Funds" in this matter serves only the purpose of acting as lead plaintiff in this litigation, stating that they "decided that it would be a benefit to the organizations [they] represent and the Class [they] seek to represent if [they] jointly sought appointment as Lead Plaintiff in a small cohesive group."   Pratsinakis Decl. ¶ 2, Ex. E, ¶¶ 6, 8.

---

[4]  $56,779.66 of Dr. Brennan's loss is alleged to have occurred during the September 15, 2015 to October 1, 2015 class period.   Sarnelli Decl. at ¶ 5, Ex. D.

[5]  In addition, I note that the entities comprising the Public Pension Funds only purchased their Amicus stock in the larger putative class period and held those shares during the shorter period, whereas Dr. Brenner purchased (and held) Amicus stock in both putative class periods. *See Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 638 (D.N.J. 2002).

With respect to their method of governance over this collection of funds, the principals declare:

> Through supervision of our chosen counsel, we will ensure that the action is prosecuted for the benefit of the Class in an efficient and cost-effective manner. In order to achieve this result, we plan on consulting with each other and counsel regarding the prosecution of this lawsuit via telephone and email. We also understand that some of these meetings may need to be conducted without counsel. To this end, we each have contact information for one another and are able to call meetings with and without counsel as needed. We have implemented protocols for calling emergency meetings and have agreed to use our best efforts to participate in all emergency meetings upon 24-hours of notice.

*Id.* at ¶ 2, Ex. E, ¶ 11.

Indeed, these are not individual investors who are joining together to serve as a group lead plaintiff. In that regard, absent from the joint declaration is any description of how each of the declarants themselves – the General Counsel of SEPTA, the Commissioner Chairmen of BCERF and CCERF, and the Deputy County Solicitor for the DCERF –would be authorized to act on behalf of their respective entities. Presumably, these principals cannot act with unfettered discretion. Therefore, appointing the Public Pension Funds as lead plaintiff would require not only the "group" of the Public Pension Funds as a whole to agree on decisions, but also for each of the governing bodies of the entities comprising the Public Pension Funds group to individually agree to those decisions as well. Importantly, the Public Pension Funds, a group consisting of four entities, have not indicated how they will proceed in the event that their decision-makers become deadlocked by an even split in their voting. This may create an untenable decision making process that may not adequately protect the putative class members. *Cf. In re Vonage*, 2007 U.S. Dist. LEXIS 66258 at *36-37 (appointing group as lead plaintiff where group was a "small, completely related group," that "function[ed] as a single person" that was "able to control the prosecution of this litigation and make unified decisions").

Accordingly, this Court holds that the Public Pension Funds cannot aggregate their losses to serve as lead plaintiff and, therefore, Dr. Brenner has the largest financial loss.

### D. Rule 23 – Adequacy and Typicality

With respect to the third requirement, adequacy and typicality, the Third Circuit has directed that "[t]he initial inquiry (*i.e.*, the determination of whether the movant with the largest interest in the case "otherwise satisfies" Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." *In re Cendant*, 264 F.3d at 263. "In conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id.* at 264.

When making these determinations, courts should apply traditional Rule 23

principles.   Thus, in inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.

In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.

*Id.* at 264-65 (citations and internal quotation marks omitted).

In addition, the court must consider whether "the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel," that is, "whether the choices [of counsel and terms of its retainer agreement] made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all."[6]   *Id.* at 265-66.   Even a plaintiff with the largest financial loss may be found inadequate if "[he] lacked legal experience or sophistication, intended to select as lead counsel a firm that was plainly incapable of undertaking the representation, or had negotiated a clearly unreasonable fee agreement with its chosen counsel."   *Id.*   However, at this stage, the Court need not approve the movant's "choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all."   *Id.* at 266.

Dr. Brenner has made a sufficient showing of typicality under Rule 23.   The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the other class members, and their claims are based on the same legal issues.   *Janovici v. DVI, Inc., et al.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, 23 (E.D. Pa. Nov. 25, 2003) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1982), *cert denied*, 470 U.S. 1060 (1985)).   Here, Dr. Brenner's injuries arise out of the same events alleged in the Complaint.   That is, Dr. Brenner acquired Amicus stock at prices allegedly inflated by Defendants' allegedly false and misleading statements, and Dr. Brenner suffered losses similar to those of other putative class members in both class periods.   *See* Sarnelli Decl. ¶¶ 4, 5, Ex.'s C, D.   Therefore, Dr. Brenner's claims are typical of members in the putative class.

Dr. Brenner has also met the adequacy requirement under Rule 23.   The factor is fulfilled when "both the class representative and its attorneys are capable of satisfying their obligations,

---

[6] An additional factor, as discussed *supra*, arises only when the movant is a group rather than an individual person or entity.   *In re Cendant*, 264 F.3d at 266.   This factor is not relevant here because Dr. Brenner is an individual.

and neither has interests conflicting with those of other class members." *Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 633 (D.N.J. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d at 265.   Dr. Brenner, with such a large financial loss, has a strong incentive to fully prosecute this action.   *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998).   Dr. Brenner's interests appear to be aligned with the rest of the class.   Next, having fully reviewed proposed class counsel's qualifications, and the manner in which counsel was selective by Dr. Brenner, I find that Dr. Brenner has hired experienced legal counsel.   *See* Sarnelli Decl. ¶¶ 6, 7, Ex.'s E, F.   Thus, Dr. Brenner is entitled to the presumption of being the "most adequate plaintiff" under the PSLRA.

### E.   Rebuttal of the Presumption

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted."   *In re Cendant Corp. Litig.*, 264 F.3d at 268.   The two primary grounds for rebutting the presumption of adequacy under the PSLRA are that the plaintiff either "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(II).

> [O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a "fair[] and adequate[]" job.

*In re Cendant Corp. Litig.*, 264 F.3d at 268.   "If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff.   If the presumption has been rebutted, the court must begin the process anew . . . until a lead plaintiff is selected."   *Id.*

Although Public Pension Funds argues that it should be appointed lead plaintiff based on its position that, combined, its underlying entities have the largest financial loss, neither that group, nor any of the other potential lead plaintiffs, have sought to rebut the presumption that Dr. Brenner should serve as lead plaintiff pursuant to the PSLRA on the grounds listed above.   *See City of Roseville Emples. Ret. Sys. v. Horizon Lines, Inc.*, No. 08-969, 2009 U.S. Dist. LEXIS 62572, 7 (D. Del. June 18, 2009).   As no plaintiff has sought to rebut the presumption that Dr. Brenner is the "most adequate plaintiff" under the PSLRA, the presumption applies and the Court will appoint Dr. Brenner to serve as lead plaintiff in this litigation.

## III.   MOTION FOR LEAD COUNSEL

Under the PSLRA, the task of selecting lead counsel is given to the most adequate plaintiff, subject to the approval of the court.   15 U.S.C.A. § 78u-4(a)(3)(B)(v).   The court must make "an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class."   *In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 176 (D.N.J. 1999).

Dr. Brenner seeks approval of his counsel, Block & Leviton, LLP, as lead counsel, and the law firm of Gardy & Notis, LLP, as his liaison counsel.  By reviewing the firm's resume, the Court is satisfied that the proposed lead counsel is competent to represent Dr. Brenner.  *See* Sarnelli Decl. ¶ 6, Ex. E.   Similarly, the law firm of Gardy & Notis, LLP, in its capacity as liaison counsel, is qualified and experienced to conduct this litigation.  *Id.* at ¶ 7, Ex. F.   Furthermore, no other party disputes the competency of Dr. Brenner's selected counsel.

Accordingly, based on this Court's independent review of the experience of Block & Leviton, LLP and Gardy & Notis, LLP, I approve Dr. Brenner's selection of counsel, and Block & Leviton, LLP is designated as lead counsel and Gardy & Notis, LLP is designated as liaison counsel.

## IV.    DOCUMENT PRESERVATION

Finally, this Court agrees that Dr. Brenner's proposed order contains a redundant provision providing for "the parties" to take reasonable steps to preserve documentation for litigation. "[T]he preservation of evidence in the possession of the parties is statutorily automatic."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 421 (S.D.N.Y. 2004) (quoting *In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1273 (D. Minn. 1997)).   Specifically, the PSLRA provides:

> During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i). As Dr. Brenner has "not indicated that [he] is seeking the preservation of documents by non-parties, nor has [he] argued that Defendants lack notice as to which types of documents need be preserved," such an order would either unnecessarily duplicate the obligations created under the PSLRA or alter those obligations without justification.  *See Pirelli Armstrong*, 229 F.R.D. at 421. Accordingly, Dr. Brenner's request for such a provision is denied.

In summary, these actions are consolidated; Dr. Barry Brenner is appointed as lead plaintiff; Block & Leviton, LLP is designated as Lead Counsel; and Gardy Notis, LLP is designated as Liaison Counsel.   A separate Order will follow.

Sincerely yours,

 /s/ Freda L. Wolfson
FREDA L. WOLFSON

—11—

United States District Judge